JUDGE GARDEN

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone:    (212) 317-1200
Facsimile:    (212) 317-1620
*Attorneys for Plaintiffs*

**12 CV 8580**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
IVAN MARQUEZ, ALEXANDER
CEBALLOS, LUCIO MARTINEZ and
CONCEPCION RAMIREZ, *individually and
on behalf of others similarly situated,*

                                        *Plaintiffs,*

                    -against-

ERENLER INC. (d/b/a AKDENIZ),
SUYLAYMAN YENILER, MURATH
AKTAS and AMUL CHADDHA,

                                        *Defendants.*
--------------------------------------------------------X

**COMPLAINT**

**Rule 23 Class Action & Collective
Action under 29 U.S.C. § 216(b)**

**ECF Case**



RECEIVED
NOV 27 2012
U.S.D.C. S.D. N.Y.
CASHIERS

Ivan Marquez, Alexander Ceballos, Lucio Martinez and Concepcion Ramirez

("Plaintiffs"), individually and on behalf of others similarly situated, by and through their

attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against

Erenler Inc. (d/b/a AKdeniz) ("Defendant Corporation" or "AKdeniz"), Suylayman Yeniler,

Murath Aktas and Amul Chaddha (together with Defendant Corporation, "Defendants"), allege

as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants Erenler Inc. (d/b/a AKdeniz),

Suylayman Yeniler, Murath Aktas and Amul Chaddha.

12 CV 8580

RECEIVED

NOV 2 7 2012

U.S.D.C. S.D. N.Y.
CASHIERS

2.      Defendants own, operate, and/or control a Turkish restaurant located at 19 West 46th Street, New York, New York 10036 under the name AKdeniz.

3.      Plaintiffs were ostensibly employed by Defendants as delivery workers, food runners and busboys, but were also required to perform various other restaurant duties, such as transporting supplies from the street to the basement, cleaning tables, washing the floor of the restaurant, washing the sidewalk, bringing out bicycles to the street at the beginning of the day and putting them back in at the end of the day, and cutting cardboard.

4.      At all times relevant to this complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay, or for any additional overtime premium. Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours per day.

5.      Defendants employed and accounted for the Plaintiffs as delivery workers, food runners and busboys in their payroll, but in actuality their duties required greater or equal time spent in non-tipped functions, including those outlined above.

6.      Regardless, at all times Defendants paid Plaintiffs at the lowered tip-credit rate.

7.      However, under state law Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

8.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying them at the minimum wage

2

rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as delivery workers, food runners and busboy instead of as non-tipped employees.

9.      Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

11.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and of all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

13.     Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

14.     Ivan Marquez ("Plaintiff Marquez" or "Mr. Marquez") is an adult individual residing in Kings County, New York. He was employed by Defendants from approximately 2005 until November 2012.

15.     Alexander Ceballos ("Plaintiff Ceballos" or "Mr. Ceballos") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately March 2008 until November 2012.

16.     Lucio Martinez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately April 2010 until November 2012.

17.     Concepcion Ramirez ("Plaintiff Ramirez" or "Mr. Ramirez") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately September 2006 until December 31, 2011.

### *Defendants*

18.     At all times relevant to this complaint, Defendants owned, operated, and/or controlled a Turkish restaurant located at 19 West 46th Street Street, New York, New York 10036, under the name AKdeniz.

4

19.     Upon information and belief, Erenler Inc. is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 19 West 46th Street, New York, NY 10036.

20.     Defendant Suylayman Yeniler is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Suylayman Yeniler is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

21.     Upon information and belief, Defendant Suylayman Yeniler possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

22.     Defendant Suylayman Yeniler determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

23.     Defendant Murath Aktas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Murath Aktas is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

24.     Upon information and belief, Defendant Murath Aktas possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

25. Defendant Amul Chaddha determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26. Defendant Amul Chaddha is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Amul Chaddha is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

27. Upon information and belief, Defendant Amul Chaddha possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

28. Defendant Amul Chaddha determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

29. Defendants operate a Turkish restaurant under the name "AKdeniz," located in the midtown district of Manhattan.

30. Upon information and belief, Individual Defendants Suylayman Yeniler, Murath Aktas and Amul Chaddha possess operational control over the Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

6

31.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

34.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.    Upon information and belief, Individual Defendant Suylayman Yeniler operates Defendant Corporation as either an alter ego of himself, and/or fails to operate Defendant Corporation as entities legally separate and apart from himself, by, among other things:

      a.    failing to adhere to the corporate formalities necessary to operate the Defendant Corporation as separate and legally distinct entity;

      b.    defectively forming or maintaining the Defendant Corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

      c.    transferring assets and debts freely as between all Defendants;

      d.    operating the Defendant Corporation for his own benefit as the sole or majority shareholder;

   e.   operating the Defendant Corporation for his own benefit and maintaining control over it as a closed corporation or closely held controlled entity;

   f.   intermingling assets and debts of his own with the Defendant Corporation;

   g.   diminishing and/or transferring assets to protect his own interests; and

   h.   other actions evincing a failure to adhere to the corporate form.

36.     Upon information and belief, Individual Defendant Murath Aktas operates Defendant Corporation as either an alter ego of himself, and/or fails to operate Defendant Corporation as entities legally separate and apart from himself, by, among other things:

   a.   failing to adhere to the corporate formalities necessary to operate the Defendant Corporation as separate and legally distinct entity;

   b.   defectively forming or maintaining the Defendant Corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

   c.   transferring assets and debts freely as between all Defendants;

   d.   operating the Defendant Corporation for his own benefit as the sole or majority shareholder;

   e.   operating the Defendant Corporation for his own benefit and maintaining control over it as a closed corporation or closely held controlled entity;

   f.   intermingling assets and debts of his own with the Defendant Corporation;

   g.   diminishing and/or transferring assets to protect his own interests; and

   h.   other actions evincing a failure to adhere to the corporate form.

37.     Upon information and belief, Individual Defendant Amul Chaddha operates
Defendant Corporation as either an alter ego of himself, and/or fails to operate Defendant
Corporation as entities legally separate and apart from himself, by, among other things:

    a.  failing to adhere to the corporate formalities necessary to operate the Defendant
Corporation as separate and legally distinct entity;

    b.  defectively forming or maintaining the Defendant Corporation, by among other
things failing to hold annual meetings or maintaining appropriate corporate
records;

    c.  transferring assets and debts freely as between all Defendants;

    d.  operating the Defendant Corporation for his own benefit as the sole or majority
shareholder;

    e.  operating the Defendant Corporation for his own benefit and maintaining control
over it as a closed corporation or closely held controlled entity;

    f.  intermingling assets and debts of his own with the Defendant Corporation;

    g.  diminishing and/or transferring assets to protect his own interests; and

    h.  other actions evincing a failure to adhere to the corporate form.

38.     At all relevant times, Defendants were Plaintiffs' employers within the meaning
of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs,
control the terms and conditions of employment, and determine the rate and method of
compensation in exchange for their services.

39.     In each year from 2006 to present, Defendants, both separately and jointly, had a
gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail
level that are separately stated).

40.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used and sold daily at AKdeniz, such as meats and beverages, were produced outside the state of New York.

*Plaintiffs*

41.     Plaintiffs are former employees of Defendants, who were ostensibly employed as delivery workers, food runners and bus boys, but had to do a variety of non-tip tasks at the restaurants.

42.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Ivan Marquez*

43.     Plaintiff Marquez was employed by Defendants from approximately 2005 until November 2012.

44.     During this time, Plaintiff Marquez ostensibly was employed by Defendants as a delivery worker.

45.     However, throughout his employment, Plaintiff Marquez spent over two hours per day performing non-delivery worker duties including transporting supplies from the street to the basement, washing the floor of the restaurant, washing dishes, cleaning tables, washing the sidewalk, bringing out bicycles to the street at the beginning of the day and putting them back in at the end of the day and cutting cardboard pieces to put inside delivery bags.

46.     Plaintiff Marquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

47.     Plaintiff Marquez's work duties required neither discretion nor independent judgment.

48.     Plaintiff Marquez regularly worked in excess of 40 hours per week.

10

49.     From approximately November 2006 until November 2012, Plaintiff Marquez worked a schedule from 11:00 a.m. until 10:00 p.m., six days a week (typically 66 hours per week).

50.     Prior to February 2012, Plaintiff Marquez was paid his wages in cash; from that date until November 2012, he was paid by a check.

51.     From approximately November 2006 until November 2012, Plaintiff Marquez was paid a flat rate of $30.00 per day.

52.     Plaintiff Marquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

53.     Plaintiff Marquez was never notified by Defendants that his tips would be included as an offset for wages.

54.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Marquez's wages.

55.     Defendants did not provide Mr. Marquez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

56.     However, from mid-2010 to 2011, Defendants required Plaintiff Marquez to sign a document the contents of which he was not allowed to read.

57.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Marquez regarding overtime and wages under the FLSA and NYLL.

58.      Plaintiff Marquez was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

59.     Defendants required Plaintiff Marquez to purchase "tools of the trade" with his own funds—including approximately two bicycles (one for $250 and one for $280), a basket for $60, 10 locks for $20 each and a chain for $40. Thus, the total cost of the "tools of the trade" that Plaintiff Marquez was required to purchase as a delivery worker was approximately $830.00.

*Plaintiff Alexander Ceballos*

60.     Plaintiff Ceballos was employed by Defendants from approximately March 2008 until November 2012.

61.     Plaintiff Ceballos ostensibly was employed by Defendants as a delivery worker.

62.     However, throughout his employment, Plaintiff Ceballos spent over two hours of his workday performing non-delivery worker duties including those outlined above.

63.     Plaintiff Ceballos regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

64.     Plaintiff Ceballos's work duties required neither discretion nor independent judgment.

65.     Plaintiff Ceballos regularly worked in excess of 40 hours per week.

66.     From approximately March 2008 until November 2012, Plaintiff Ceballos worked from 11:00 a.m. until 10:00 p.m., five days a week (typically 55 hours per week).

67.     Throughout his employment with Defendants, Plaintiff Ceballos was paid his wages in cash.

68.     From approximately March 2008 until November 2012, Plaintiff Ceballos was paid a flat rate of $30.00 per day, or $150 per week.

69.     Plaintiff Ceballos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

70.     Plaintiff Ceballos was never notified by Defendants that his tips would be included as an offset for wages.

71.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ceballos's wages.

72.     Defendants did not provide Mr. Ceballos with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

73.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Ceballos regarding overtime and wages under the FLSA and NYLL.

74.     Plaintiff Ceballos was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

75.     Defendants required Plaintiff Ceballos to purchase "tools of the trade" with his own funds—including three bicycles (one for $130, one for 200 and one for $80) and a chain and lock set for $40. Thus, the total cost of the "tools of the trade" that Plaintiff Ceballos was required to purchase as a delivery worker is approximately $450.00.

*Plaintiff Lucio Martinez*

76.     Plaintiff Martinez was employed by Defendants from approximately April 2010 until November 2012.

77.     Plaintiff Martinez ostensibly was employed by Defendants as a delivery worker.

78.     However, throughout his employment, Plaintiff Martinez spent over two hours of his workday performing non-delivery worker duties including those outlined above.

13

79.     Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

80.     Plaintiff Martinez's work duties required neither discretion nor independent judgment.

81.     Plaintiff Martinez regularly worked in excess of 40 hours per week.

82.     From approximately April 2010 to June 2010, Plaintiff Martinez worked from 11:00 a.m. to 10:00 p.m. five days a week (typically 55 hours per week).

83.     From approximately June 2010 until November 2012, Plaintiff Martinez worked from 11:00 a.m. until 10:00 p.m., six days a week (typically 66 hours per week).

84.     Throughout his employment with Defendants, Plaintiff Martinez was paid his wages in cash.

85.     From approximately April 2010 until November 2012, Plaintiff Martinez was paid a flat rate of $30.00 per day, or $150 per week.

86.     Plaintiff Martinez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

87.     Plaintiff Martinez was never notified by Defendants that his tips would be included as an offset for wages.

88.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

89.     Defendants did not provide Mr. Martinez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

90.     No notification, either in the form of posted notices, or other means, was given to Plaintiff Martinez regarding overtime and wages under the FLSA and NYLL.

91.     Plaintiff Martinez was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

*Plaintiff Concepcion Ramirez*

92.     Plaintiff Ramirez was employed by Defendants from approximately September 2006 until December 31, 2011.

93.     Plaintiff Ramirez was employed by Defendants as a busboy and food runner.

94.     Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

95.     Plaintiff Ramirez's work duties required neither discretion nor independent judgment.

96.     Plaintiff Ramirez regularly worked in excess of 40 hours per week.

97.     From approximately September 2006 until February 2009, Plaintiff Ramirez worked a schedule from 11:00 a.m. until 10:00 p.m., Mondays through Fridays and from 4:00 p.m. to 10:00 p.m. on Saturdays (typically 61 hours per week).

98.     From approximately February 2009 to December 31, 2011, Plaintiff Ramirez worked from 11:00 a.m. to 10:00 p.m. Mondays through Fridays (typically 55 hours per week).

99.     Throughout his employment with Defendants, Plaintiff Ramirez was paid his wages in cash.

100.     From approximately September 2006 to May 2011, Plaintiff Ramirez was paid a flat rate of $30.00 per day.

101.    From approximately May 2011 to December 2011, Plaintiff Ramirez was paid a flat rate of $50 per day.

102.    Plaintiff Ramirez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

103.    Plaintiff Ramirez was never notified by Defendants that his tips would be included as an offset for wages.

104.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages.

105.    Defendants did not provide Mr. Ramirez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

106.    No notification, either in the form of posted notices, or other means, was given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

107.    Plaintiff Ramirez was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

108.    Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including approximately 25 black dress shirts for $30 each, 20 dress pants for $40 each and 10 pairs of shoes for $60 for each pair. Thus, the total cost of the "tools of the trade" that Plaintiff Ramirez was required to purchase as a busboy was approximately $2,150.00.

*Defendants' General Employment Practices*

109.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours

per week without paying them appropriate minimum wage, overtime, and spread of hours compensation, as required by federal and state laws.

110.   Defendants required Plaintiffs to perform several non-tip-related tasks for over two hours of each work day, in addition to their primary role as delivery workers. These responsibilities included everything from carrying down deliveries from the street to the basement, washing the floor of the restaurant, cleaning tables, washing the sidewalk, bringing out bicycles to the street at the beginning of the day and putting them back in at the end of the day and cutting cardboard pieces.

111.   Plaintiffs were employed ostensibly as delivery workers, food runners and busboys (tipped employees) by Defendants, although their actual duties included much greater time spent in non-tipped functions.

112.   Plaintiffs were paid at the lowered tip-credited rate by Defendants, however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever were less) (12 N.Y.C.R.R. § 146).

113.   New York State regulations provide that an employee cannot be classified as a tipped employee "on any day... in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

114.   Plaintiffs' duties were not incidental to their occupation as delivery workers or busboys, but instead constituted entirely unrelated occupations with duties such as those outlined above. While performing these duties, Plaintiffs did not receive tips; therefore, they constituted non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

115.   In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

116.   Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

117.   Plaintiffs have been victim of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the hours they had worked.

118.   As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

119.   At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

120.   Defendants failed to post required wage and hour posters in the workplace, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' s' relative lack of sophistication in wage and hour laws.

121.   Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

122.    Upon information and belief, this was done to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for (i) their full hours worked, (ii) for overtime due, and (iii) for spread of hours pay.

123.    Defendants did not provide Plaintiffs s with any document or other statement accurately accounting for their actual hours worked, and setting forth rate of minimum wage and overtime wage.

124.    Plaintiffs were paid their wages entirely in cash.

125.    Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

## FLSA COLLECTIVE ACTION CLAIMS

126.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 class Period").

127.    At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

128.     The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

129.     Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

130.     Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

131.     The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

132.     There are questions of law and fact common to the Class including:

a.     what proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.     what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.     what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.     whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e.     whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f.     whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g.     at what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h.     what are the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

133.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

134.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

135.    The common questions of law and fact predominate over questions affecting only individual members.

136.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

137.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
### (Violation of the Minimum Wage Provisions of the FLSA)

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA and Rule 23 class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

140.    Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), control his terms and conditions of employment, and determine the rate and method of any compensation.

141.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

142.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

143.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

144.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

145.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the Overtime Provisions of the FLSA)

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

148.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

149.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the New York Minimum Wage Act)

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

152.    Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 class members), control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

153.    Defendants, in violation of the NYLL, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

154.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

155.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Violation of the Overtime Provisions of the New York Labor Law)

156.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

157.   Defendants, in violation of the NYLL § 190 *et seq.* and associated rules and regulations, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

158.   Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

159.   Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

160.   Plaintiffs (and the FLSA and Rule 23 class members) has been damaged in an amount to be determined at trial.


## FIFTH CAUSE OF ACTION
### (Violation of the Spread of Hours Wage Order of the New York Commissioner of Labor)

161.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.   Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

163.   Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' (and the FLSA and Rule 23 class members)

spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

164.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs and the FLSA and Rule 23 class members;

(f)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the

amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(i)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(j)    Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

(k)    Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA and Rule 23 class members' compensation, hours, wages; and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA and Rule 23 class members;

(m)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorney's fees; and

(q)     All such other and further relief as the Court deems just and proper.


Dated: New York, New York
       November 27, 2012

MICHAEL FAILLACE & ASSOCIATES, P.C.


By: _____
    Michael Faillace [MF-8436]

    60 East 42nd Street, Suite 2020
    New York, New York 10165
    Telephone: (212) 317-1200
    Facsimile: (212) 317-1620
    *Attorneys for Plaintiffs*